UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA

       -against-                   <u>MEMORANDUM & ORDER</u>
                                   17-CR-0372-13(JS)
MCARTHUR JEAN,

                    Defendant.
--------------------------------X
APPEARANCES
For United States:  Whitman G.S. Knapp, Esq.
                 Kaitlin T. Farrell, Esq.
                 U.S. Attorney's Office
                 Eastern District of New York
                 271 Cadman Plaza East
                 Brooklyn, New York 11201

For Defendant:     McArthur Jean, <u>pro se</u>
                 90293-053
                 Fort Dix, Federal Correctional Institution
                 P.O. Box 2000
                 Fort Dix, New Jersey 08640

SEYBERT, District Judge:

      Defendant McArthur Jean ("Defendant") seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(l)(A), in light of health concerns and the COVID-19 pandemic.[1]  (Mot., ECF No. 875; Suppl. Br., ECF No. 931.)  The

---

[1] Although he was represented from arraignment through sentencing, Defendant filed this motion <u>pro se</u>.  (<u>See</u> Dec. 8, 2020 Elec. Order (construing Defendant's letter request as a motion for compassionate release).)  On January 22, 2021, the Court granted Defendant's prior counsel permission to supplement the compassionate release application.  (<u>See</u> Leave Request, ECF No. 928; Jan. 22, 2021 Elec. Order; Suppl. Br., ECF No. 931.)  The Government did not file a supplemental response.

Government opposes the motion.  (Gov't Opp., ECF No. 922.)  For the reasons set forth below, the motion is GRANTED.

<u>BACKGROUND</u>

I.   <u>Factual and Procedural History</u>

On or around July 11, 2017, a grand jury charged Defendant with conspiracy to commit securities fraud, conspiracy to commit wire fraud, and two counts of substantive securities fraud arising out of his role as a cold-caller in a "Boiler Room" that engaged in "manipulative trading patterns, including wash trades and matched trades, to drive up" the share prices of various publicly traded companies while employees, such as Defendant, "aggressively and repeatedly called and emailed victim investors to purchase shares." (Indictment, ECF No. 1.)  On August 22, 2018, Defendant, represented by counsel, pled guilty to one count of conspiracy to commit securities fraud.  (Min. Entry, ECF No. 266.)

This offense carried a statutory maximum of 60 months' incarceration and the sentencing guidelines provided a range of 135 to 168 months' imprisonment.  (Am. Presentence Report ("Am. PSR"), ECF No. 426, ¶ 145.)  Probation recommended a term of 60 months' incarceration and $8,501,925.15 in restitution.[2] (Probation Rec., ECF No. 357-1, at 1.)  On July 26, 2019, the Court

---

[2] The PSR indicated that Defendant was directly accountable for a loss of $114,727,270 and that he retained $115,802 in proceeds. (First PSR, ECF No. 357, ¶¶ 85, 142.)

2

sentenced Defendant to a term of 48 months' incarceration and 3 years' supervised release.  (Min. Entry, ECF No. 451; Sent'g J., ECF No. 452.)

## II. Defendant's Motion

Defendant is 38 years old and is incarcerated at FCI Fort Dix in New Jersey.  As of the date of this Order, Defendant has served approximately one and a half years of his sentence and is expected to be released on April 1, 2023.  See BOP.gov, www.bop.gov/inmateloc/index.jsp (last visited Apr. 6, 2021).  On or around August 17, 2020, Defendant, proceeding pro se, moved this Court for compassionate release, requesting to serve the remainder of his sentence on the condition of home confinement. If released, he will reside with his parents at their home in Miami, Florida.  (Mot. at ECF p. 13.)  The Government opposes the motion arguing that Defendant does not identify medical conditions that constitute extraordinary and compelling reasons to warrant a modification of his sentence (Gov't Opp. at 6-7), and the Section 3553(a) factors weigh against release (id. at 7-10).

DISCUSSION

## I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614

(S.D.N.Y. 2020)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Under the statute, courts have discretion to grant compassionate release when (1) there are "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)."  United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020); see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application

4

Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . <u>alone</u> shall not be considered an extraordinary and compelling reason.'" <u>Id.</u> at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." <u>United States v. Davies</u>, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). A defendant "bears the burden of showing that his release is justified." <u>United States v. Patterson</u>, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

II. <u>Analysis</u>

Defendant requests compassionate release because (1) he has not committed any disciplinary infractions while incarcerated; (2) he has a "minimum score" on the Prisoner Assessment Tool

Targeting Estimated Risk and Needs ("PATTERN");[3] (3) he was convicted of a nonviolent crime; (4) COVID-19 disproportionately affects Black men and women; (5) he suffers from a painful skin condition that weakens his immune system; and (6) the spread of COVID-19 at FCI Fort Dix.   (See generally Mot.)   In his supplemental application, Defendant argues that release to home confinement is warranted given the "amount of prison time he has already served, the general danger and ease of spread of COVID-19 and the specific conditions of his current incarceration." (Suppl. Br. at 3.)

A.    Exhaustion

Defendant submits copies of multiple correspondence to FCI Fort Dix staff requesting, among other things, release to home confinement or relocation to Florida.   (Mot. at ECF p. 11 (dated Apr. 4, 2020); id. at p. 13 (dated Apr. 6, 2020); and id. at p. 15 (undated).)   He also submits copies of his requests for compassionate release, dated April 2, 2020, accompanied by a form that includes a handwritten notation that Defendant "still ha[s]

---

[3] According to the BOP's website, "[t]he risk and needs assessment system is used to determine the risk and needs of inmates in BOP custody. Specifically, the system determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk. The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct."   See First Step Act – Frequently asked Questions, BOP.gov, https://www.bop.gov/in-mates/fsa/faq.jsp#fsa_system (last visited Apr. 6, 2021).

to serve 50%." (Id. at ECF pp. 19-25.)  The Court thus finds that
Defendant exhausted his administrative remedies.  United States v.
Genovese, No. 18-CR-0183, 2020 WL 4004164, at *2 (S.D.N.Y. July
15, 2020) (the Court "need not wade into the exhaustion question
because more than 30 days have lapsed since the warden . . .
received [Defendant's] petition for compassionate release"
(citations omitted)).

     B.   Extraordinary and Compelling Reasons

        Based on the facts unique to this case, including
Defendant's uncertain medical skin condition, the Court exercises
its discretion under Brooker and finds extraordinary and
compelling reasons favor a sentence reduction.  976 F.3d at 237-
38 ("[A] district court's discretion [in sentencing] -- as in all
sentencing matters -- is broad")  Indeed, although Defendant does
not submit medical records, the Court is aware of his skin
condition.  (See First PSR ¶ 119.)  And, crediting his
representation that it "may relate to an immunity deficiency"
(Suppl. Br. at 1), the Court recognizes that condition may place
him at higher risk of complications from COVID-19, which is
"exacerbated by the conditions of his incarceration."  United
States v. Resto, No. 08-CR-0757, 2021 WL 1109467, at *2 (S.D.N.Y.
Mar. 23, 2021); (see Suppl. Br. at 4 ("Social distancing is
impossible.  Mr. Jean is housed in an area where eight (8) other
inmates sleep within six feet of him.  He continues to have little

or no protection from the virus and social distancing is impossible.").) While the number of positive COVID-19 cases at FCI Fort Dix may have decreased, the Court is convinced that Defendant faces uncertain health risks and that "he will be better able to access whatever care and treatment he may require in the future if he is not incarcerated." United States v. Mongelli, No. 02-CR-0307, 2020 WL 6449237, at *3 (E.D.N.Y. Nov. 3, 2020). Defendant's record of rehabilitation further supports the Court's finding that extraordinary and compelling reasons justify reducing his sentence. Brooker, 976 F.3d at 238; United States v. Mapp, 467 F. Supp. 3d 63, 65 (E.D.N.Y. 2020). In fact, Defendant has not incurred a single disciplinary infraction while incarcerated, which is not surprising given that he has no criminal background other than his conviction. (See Suppl. Br. at 5.)

   C.   The 3553(a) Factors

        The Court also considers the Section 3553(a) factors and finds they weigh in favor of release. See 18 U.S.C. § 3582(c)(1)(A)(i). The Court sentenced Defendant for his role as cold caller in a fraudulent stock manipulation operation who aggressively targeted the victim investors and caused them devastating financial and emotional losses. As such, there is little doubt that the "severity of [Defendant's] conduct remains unchanged." United States v. Zukerman, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020). However, the "environment where [he] is serving

his sentence" has certainly changed.    Id. ("When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." (quoting United States v. Rodriguez, 451 F. Supp. 3d 392, 407 (E.D. Pa. Apr. 1, 2020))). Moreover, Defendant has no criminal history of any kind and the Court credits his disciplinary record and notes that "the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community." United States v. Yu, No. 90-CR-0047, 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 23, 2020).

        Therefore, the period of incarceration that Defendant has already served, with the forthcoming period of supervised release, "has already achieved much of the original sentence's retributive, deterrent, and incapacitative purpose." United States v. Anderson, No. 16-CR-0824, 2020 WL 2849483, at *2 (S.D.N.Y. June 2, 2020) (quoting United States v. Pena, No. 15-CR-0551, 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020)).

                              CONCLUSION

        For the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 875) is GRANTED. **IT IS HEREBY ORDERED** that:

    (1) Defendant's sentence is modified to time served and the previously imposed term of three (3) years' supervised release

will commence immediately.  Defendant is subject to the previously imposed term(s) of supervised release, including all standard, mandatory, and special conditions of supervision delineated at sentencing by this Court.  The Court imposes additional special conditions of supervised release:  During the period equivalent to the undischarged portion of his sentence, (1) Defendant shall be subject to electronic monitoring by whatever technology is deemed appropriate by the Probation Department; and (2) Defendant shall be on home detention, except as necessary for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the Probation Department; and

(2)  Upon release, Defendant shall self-quarantine for fourteen (14) days; and

(3)  Within one week of his release, Defendant shall call the Probation Department to schedule an appointment; and

(4)  Defense Counsel shall provide Defendant with a copy of this Memorandum and Order forthwith.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April __6__, 2021
       Central Islip, New York

10